| .THIBODEAUX, Judge.
Plaintiff, Beryl Buck, an educator at Er-ath High School, filed suit on October 22, 1998, against the Vermilion Parish School Board (hereinafter, the “School Board”) alleging that in her job she was routinely discriminated against based on her gender and her age. The School Board filed a peremptory exception of prescription. The plea of prescription was based on the ground that Ms. Buck had resigned her job as assistant principal of Abbeville High School more than one year before she filed suit. The plea of prescription was granted by the trial court. Ms. Buck appeals.
We reverse. Ms. Buck resigned on October 24, 1997, and the alleged acts of and discriminatory conduct based on age and gender continued through at least October 23,1997.
I.

ISSUE

We must decide whether the trial court was manifestly erroneous when it deter *585 mined that Ms. Buck’s claim had prescribed.
II.

FACTS

Ms. Buck filed a complaint with the Equal Employment Opportunity Commission on July 21, 1997, and detailed a series of allegedly discriminatory practices against the School Board from 1986-1997. Essentially, her complaint focused on illegal harassment and discrimination based on age, sex, and in retaliation for her prior litigation, union, and political activities.
| jjShe was appointed as the assistant principal of Abbeville High School in August 1991. Mr. Randy Schexnayder was the principal. Ms. Buck met with Dr. Daniel Dartez, the Superintendent of Schools for Vermilion Parish, on October 20, 1997. Ms. Buck requested the meeting because she had been told by a school board member that her principal, Mr. Schexnayder, was going to recommend her termination. Dr. Dartez testified that Ms. Buck told him she wanted to resign and desired to give him a letter of resignation. He instructed her to leave the letter on his secretary’s desk for processing so that the School Board would accept it at its next meeting. Because the secretary was not at her desk, the letter was not left with her by Ms. Buck.
The court asked Dr. Dartez, “Was it [the resignation] tendered or an offer of tender?” He replied, “An offer of tender.” (emphasis supplied).
Dr. Dartez further testified that the Schobl Board had to approve the resignation which would be effective usually the date on which he received it. He later testified that the resignation would be retroactive to the date of resignation.
Ms. Buck contends that she did not attempt to tender a resignation to Dr. Dar-tez on October 20, 1997. It is clear from the record that she continued to work until at least October 23, 1997. On that date, she confronted Mr. Schexnayder about an allegation involving molestation of a student by a coach. At the same time, she confronted Mr. Schexnayder about his alleged attempts to fire her.
Ms. Buck also spoke with Dr. Dartez on October 23 at which time he gave her specific instructions to place her resignation letter on his secretary’s desk in an unmarked envelope. She had her attorney deliver the letter on October 24,1997.
| ^Action of the Trial Court
The trial court concluded that because Dr. Dartez’s version of the meeting on October 20 was more credible than Ms. Buck’s version and because Ms. Buck tendered her resignation on October 20, prescription commenced to run on October 20, 1997. Thus, the suit filed by Ms. Buck on October 22,1998 was untimely.
III.

LAW AND DISCUSSION

It is clear that claims under Louisiana’s antidiscrimination statutory provisions, La.R.S. 23:33, are governed by the one-year prescriptive period under La.Civ. Code art. 3492. King v. Phelps Dunbar, L.L.P., 98-1805 (La.6/4/99); 743 So.2d 181; Williams v. Conoco, Inc., 860 F.2d 1306 (5th Cir.1988).
It is equally clear that prescriptive statutes are to be strictly construed against prescription. A court should adopt a construction which favors the maintenance of an action when there exists two possible constructions. King v. Phelps Dunbar, 743 So.2d 181; Lima v. Schmidt, 595 So.2d 624 (La.1992). The trial court’s view of Ms. Buck’s actions on October 20, 1997 as indicating a tender of her resigna-' *586 tion is manifestly erroneous. Ms. Buck flatly denies a tender of resignation. Dr. Dartez, the School Board’s superintendent, buttressed Ms. Buck’s testimony by admitting that the resignation was not tendered on October 20; rather, there was an offer of tender. Furthermore, the School Board’s position is undermined by Dr. Dartez’s admission that one’s resignation is effective on the date of his receipt of the resignation. Here, he did not receive Ms. Buck’s letter of resignation until October 24, 1997. Moreover, once the School Board approved the resignation, it was | ¿retroactive to the date of resignation, according to Dr. Dartez. Clearly, Ms. Buck resigned her position as assistant principal of Abbeville High School on October 24. If we accept Dr. Dartez’s testimony, then the date of resignation would again be October 24, the date on which the plaintiff resigned pursuant to her letter of resignation. Under either scenario, prescription would not commence to run until October 24, 1997. The suit was, therefore, filed timely on October 22,1998.
Ms. Buck’s timeliness claim is similar to the plaintiffs claim in King v. Phelps Dunbar, L.L.P., 743 So.2d 181. In King, the plaintiff received an unfavorable work evaluation on January 20, 1995. He was not terminated. Because of the existence of a continual, hostile work environment, he tendered his resignation on March 10, 1995 to be effective March 24, 1995. The plaintiff filed suit on March 11, 1996 and was met with an exception of prescription. He successfully maintained that prescription began to run on March 24, 1995, the effective date of his resignation. Similarly, Ms. Buck’s effective date of resignation was October 24, 1997.
Ms. Buck testified to, and the record supports allegations of, a pattern of ongoing and systematic instances of discriminatory gender and age-based conduct against the School Board and its employees since 1986. The incidents were not separate and distinct incidents of harassment or discrimination. It is this “cumulation of acts and conduct, and the resultant cumulation of damages, that transforms the individual incidents of harassment into an actionable tort.” Bustamento v. Tucker, 607 So.2d 532, 540 (La.1992).
Because of the continuous nature of the alleged illicit conduct, prescription does not run until such continuous conduct is abated. Id. Ms. Buck remained in her duties at Abbeville High School until at least October 23, |B1997. She was, therefore, in the same allegedly hostile environment at least through October 23, 1997. Also, the fact that she continued to work through October 23 undercuts the School Board’s argument and the trial court’s conclusion that she resigned on October 20, 1997. It is illogical for the School Board to allow an employee who resigned on October 20 to work in her same position through October 23.
IV.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court and conclude that Ms. Buck’s suit against the Vermilion Parish School Board was timely filed. We remand to the trial court for trial on the merits.
REVERSED AND REMANDED.
YELVERTON, J., dissents and assigns written reasons.